[Cite as *Halton v. Crossley*, 2012-Ohio-550.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHERI L. HALTON and<br>KENNETH KANTER | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. Sheila G. Farmer, J. |
| Plaintiffs-Appellees | Hon. John W. Wise, J. |
| -vs- | |
| | Case Nos. 11 CA 10 and 11 CA 11 |
| DOUGLAS CROSSLEY | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case Nos. 11 DR 302 & 11 DR 303

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 9, 2012

APPEARANCES:

For Plaintiffs-Appellees

DAN GUINN
118 West High Avenue
New Philadelphia, Ohio 44663

For Defendant-Appellant

BRIAN BENBOW
605 Market Street
Zanesville, Ohio 43701

*Wise, J.*

**{¶1}** Appellant Douglas Crossley filed two companion appeals from the July 8, 2011, decision of the Coshocton County Common Pleas Court granting a Civil Stalking Protection Order against him in favor of Appellees Sheri L. Halton and Kenneth Kanter.

**{¶2}** This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:

**{¶3}** "(E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."

**{¶4}** This appeal shall be considered in accordance with the aforementioned rule.

## STATEMENT OF THE FACTS AND CASE

**{¶5}** On May 13, 2011, Appellees Sheri L. Halton and Kenneth Kanter filed a Petition for a Civil Stalking Protection Order (CSPO) which listed five specific incidents in support of the Petition. Following an ex parte hearing, the trial court granted temporary orders which required that Appellant stay away from his property and set the matter for hearing.

**{¶6}** On July 8, 2011, after a number of continuances were granted, the matter came on for full hearing. At the hearing, the trial court heard testimony from Kenneth Kanter and Sheri Halton.

{¶7} Kenneth Kanter stated that he and Ms. Halton own the property across the street from property owned by Appellant Douglas Crossley on Township Road 15-B.

{¶8} Crossley does not live at this property, but stops there almost every day to feed his cats and take a walk. (T. at 32, 51). Crossley's permanent residence is on S.R. 16.

{¶9} Upon acquiring the property, Kanter and Halton began building a residence on the property. Initially, they were there mostly on the weekends, and a couple of times during the week. (T. at 7). Halton then began to spend more time there during the week, with Kanter coming on the weekends. Halton now lives there and Kanter spends the majority of his time there. (T. at 7-8).

{¶10} The two properties are separated only by the width of the street, approximately, 50 to 70 feet. (T. at 8).

{¶11} According to Kanter, he and Crossley initially got along well but that their relationship changed about the time Appellees started building on the property. Id.

{¶12} Appellee Kanter testified to the following incidents:

{¶13} In April, 2010, Appellant threatened Appellee Kanter's son, and threatened to kill the entire family. (T. at 11, 33-36).

{¶14} In the spring of 2011, Appellant Crossley was playing his stereo boombox very loudly and faced it directly toward Appellees' property. (T. at 14).

{¶15} On a number of occasions, Appellant would start his lawn mower and leave it running in the front yard with the throttle wide open. (T. at 15-16).

{¶16} In May, 2011, Appellant Crossley began to dig post holes in the front yard. He then built three large crosses and placed them in his front yard. (T. at 17). The

largest of the crosses was 10 feet tall and the other two are approximately 9 feet and 8 feet. Id. Appellant then painted the crosses yellow and splattered them with red paint. Rope lighting was then added to the crosses. (T. at 17, 28, 42-44).

{¶17} In May, 2011, Appellant Crossley hung a doll from a noose in the garage. The doll had long hair and Appellee believed that it was meant to resemble himself. (T. at 28, 43).

{¶18} During that same weekend in May, Appellees stated that on four or five different occasions, when they walked outside, Appellant would also come outside and stare at them. (T. at 18, 44).

{¶19} On Sunday of that weekend, Appellee Kanter woke up around 6:00 a.m. and began walking down the street to use an outhouse on a neighbor's campground. (T. at 19). He stated that Appellant Crossley jumped in his truck and sped down the road towards him. Appellee stated that Appellant's actions caused him to be afraid. Id. Appellee stated that upon seeing that there were others present at the campground, Appellant turned around and went back to his house. (T. at 19).

{¶20} On May 13, 2011, Appellees filed their ex parte Petition for Civil Stalking Protection order which was granted on that day.

{¶21} The following day, before Appellant had been served with the CSPO, Appellee Kanter and a friend were taking a washing machine to his house and they drove by Appellant's residence on S.R. 16, where Appellant was sitting out front. (T. at 20). Appellee testified that he proceeded to his house, where he parked in the street to unload the washer. (T. at 20-21). He stated that Appellant came flying up the road behind them doing approximately 60-65 miles per hour, causing him to move out of the

way, and went skidding into his own driveway. (T. at 21). Appellee stated that he believed Appellant was trying to run over him with the car. Id.

**{¶22}** Appellee Kanter testified that he is in fear of Appellant for himself and his family. (T. at 22, 29).

**{¶23}** Appellee Sheri Halton also testified as to the above listed incidents with Appellant. (T. at 52-55). She testified that she felt that the crosses and the doll were meant as death threats. (T. at 55). She further testified that she was afraid of Appellant for both herself and her family. (T. at 56).

**{¶24}** Nicholas Kanter, Appellee's son, also testified to the April, 2010, incident. He stated that he went to get his dogs, which had gone onto Appellant's property, and that Appellant confronted him, yelling at him and threatening to go inside and get his guns and shoot him and his father. (T. at 74). He further testified that Appellant threatened him, his father and his whole family. (T. at 75).

**{¶25}** On cross-examination, Nicholas stated that Appellant's threats scared him and he took them seriously but that he did not call the police because Appellant calmed down afterward. (T. at 76).

**{¶26}** Appellant Crossley also testified at the hearing. During his testimony, he stated that he erected the crosses in memory of his dead mother who died back in 2002. (T. at 85). He explained that he put red paint on the crosses to represent Jesus and that the paint was placed where Jesus' feet and wrists were nailed to the cross. (T. at 86). Appellant stated that he intended on taking the crosses down on Memorial Day and putting them back up again on the following Mother's day. (T. at 87-88, 97-99).

**{¶27}** Appellant Crossley further testified that the doll in question was a Cherokee Indian doll which he had had in the house and that one of his cat's had urinated on it. He explained that he hung it outside to air out and that it was hung from a strap on its back, not a noose. (T. at 88, 99-100).

**{¶28}** Appellant admitted to playing his music loud, stating that it was Christian music he played on Sunday morning but that no one ever asked him to turn it down. (T. at 93).

**{¶29}** Appellant denied pursuing Appellee Kanter in his vehicle and further denied every making threats toward Appellees. (T. at 90, 94-95).

**{¶30}** At the conclusion of the hearing, the trial court found that there was a pattern of conduct which constituted menacing by stalking and granted a Civil Stalking Protection Order against Appellant in favor of Appellees. In so doing, the trial court stated that it did not take into consideration the death threat allegedly made in April, 2010, because it was not closely related in time to the other events. (T. at 111). The trial court, however, ordered that Appellant be allowed back onto his property and lifted the firearm restriction. The trial court ordered Appellant to restrain "from any acts of abuse, or threats of abuse against the petitioners and other protected persons" for a period of one year. In addressing Appellant, the trial court stated:

**{¶31}** "Mr. Crossley, you shall not abuse the protected persons named in the orders by harming, attempting to harm, threatening, following, stalking, harassing." (T. at 115).

**{¶32}** Appellant now appeals, assigning the following error for review:

## ASSIGNMENT OF ERROR

**{¶33}** "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED THE CIVIL STALKING PROTECTION ORDER AGAINST APPELLANT. THE TRIAL COURT'S ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THERE IS NO EVIDENCE THAT APPELLANT ENGAGED IN A 'PATTERN OF CONDUCT' OR THAT APPELLANT CAUSED 'MENTAL DISTRESS'."

**I.**

**{¶34}** In his sole assignment of error, Appellant claims that the trial court erred in granting the civil stalking protection order herein. We disagree.

**{¶35}** Revised Code §2903.214 governs the filing of a petition for a civil stalking protection order. R.C. §2903.214(C) provides:

**{¶36}** "A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member by filing a petition with the court".

**{¶37}** To be entitled to a stalking civil protection order, the petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. §2903.211, against the person seeking the order. See *Tumblin v. Jackson,* Coshocton App. No. 06CA002, 2006-Ohio-3270 at paragraph 17.

**{¶38}** R.C. Section 2903.211(A), "menacing by stalking", states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

**{¶39}** R.C. §2903.211 further provides as follows:

**{¶40}** "(D) As used in this section:

**{¶41}** "(1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents ...

**{¶42}** "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." *State v. Scruggs* (2000), 136 Ohio App.3d 631, 634, 737 N.E.2d 574, 576. One incident is insufficient to establish a "pattern of conduct." *Id.* The statute does not define the term "closely related in time," but case law suggests the trier of fact should consider the evidence in the context of all circumstances of the case, *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003. The trier of fact is best able to decide on a case-by-case basis, *State v. Dario* (1995), 106 Ohio App.3d 232, 665 N.E.2d 759.

**{¶43}** The definition requires only two or more actions closely related in time, which may occur on the same day provided there is a sufficient interval between them. *State v. Scruggs* (2000), 136 Ohio App.3d 631, 737 N.E.2d 574. Trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *Guthrie v. Long,* 2005-Ohio-1541; *Miller v. Francisco,* 2003-Ohio-1978.

**{¶44}** R.C. §2903.211(D) further states, in relevant part, as follows

**{¶45}** "(2) "Mental distress" means any of the following:

**{¶46}** "(a) Any mental illness or condition that involves some temporary substantial incapacity;

**{¶47}** "(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services."

**{¶48}** In the instant case, the trial court did not find, and Petitioners' did not allege mental distress.

**{¶49}** The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Olenik v. Huff,* Ashland App. No. 02-COA-058, 2003-Ohio-4621, at paragraph 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶50}** We further note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993–Ohio–9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these

observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

**{¶51}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact, in this case, the trial court. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159, 1997-Ohio-260.

**{¶52}** Appellant herein contends that, in the case sub judice, there was no pattern of conduct, that he did not knowingly cause Appellees to believe that he would cause them physical harm, and that Appellees did not believe that Appellant was going to cause them physical harm.

**{¶53}** Based upon our review of the record, we find that the trial court's decision to issue a protection order was not against the manifest weight and sufficiency of the evidence and that the trial court did not abuse its discretion in issuing such an order. Appellant's behavior constituted a pattern of conduct. Petitioners testified to more than one incident and further testified that they were in fear of physical harm in connection with Respondent's conduct.

**{¶54}** We find that these incidents constituted threats of bodily harm and that Appellant, as evidenced by these incidents, knowingly caused Appellee to believe that Appellant would physically harm them.

**{¶55}** The trial court's decision to give more weight to Petitioners' account of the events which had transpired will not be disturbed by this Court absent abuse of

discretion and no such abuse has been demonstrated. The evidence was sufficient to establish that the Respondent committed the offense of menacing by stalking such as to warrant issuance of a civil protection order."

**{¶56}** In cases such as these, demeanor and attitude are very important and it is very true that these do not "translate well on the written page."

**{¶57}** Again, we will not substitute our judgment for that of the trial court. The trial court is in the best position to weigh the evidence and judge the credibility of the witnesses. Upon review of the evidence, the trial court did not abuse its discretion in issuing the protection order, and the judgment of the Delaware County Court of Common Pleas is affirmed.

**{¶58}** Appellant's sole assignment of error is overruled.

**{¶59}** For the foregoing reasons, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

_____

_____

_____

                                    JUDGES

JWW/d 0201

IN THE COURT OF APPEALS FOR COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


SHERI L. HALTON and            :
KENNETH KANTER                 :
                               :
    Plaintiffs-Appellees       :
                               :
-vs-                           :            JUDGMENT ENTRY
                               :
DOUGLAS CROSSLEY               :
                               :
    Defendant-Appellant        :            Case Nos. 11 CA 10 & 11 CA 11


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is affirmed.

Costs assessed to Appellant.


_____


_____


_____

JUDGES