[Cite as *Calzo v. Lynch*, 2012-Ohio-1353.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KARRIE J. CALZO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Petitioner-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | Case No. 11CA45 |
| TIMOTHY J. LYNCH | : | |
| | : | |
| | : | |
| Respondent-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of Common Pleas, Case No. 2011-CPO-0319

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     March 20, 2012

APPEARANCES:

For Appellant:

JEFFREY S. REAM
Benham & Ream Co., L.P.A.
150 Mansfield Ave.
Shelby, Ohio 44875

For Appellee:

KARRIE J. CALZO, Pro Se
Address Not Available

*Delaney, J.*

{¶1} Respondent-Appellant Timothy J. Lynch appeals the April 19, 2011 Order of Protection granted by the Richland County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Appellant and Petitioner-Appellee Karrie J. Calzo were involved in a romantic relationship from April 2007 until December 1, 2010. Appellant and Appellee were not married but lived together at Appellant's residence with Appellee's daughter, K.C. (DOB Jan. 29, 2004). Appellant is not the biological or adoptive father of K.C.

{¶3} On March 28, 2011, Appellee filed a Petition for a Domestic Violence Civil Protection Order pursuant to R.C. 3113.31 against Appellant. In the petition, Appellee stated she broke off her relationship with Appellant on November 26, 2010 due to Appellant's behavior during the relationship towards her and her daughter. However, Appellant and Appellant's sister continued to contact Appellee through numerous text messages, emails, and phone calls. Although Appellant and Appellee were no longer in a relationship, Appellant attended the school Christmas program of Appellee's daughter, came to the home of Appellee's babysitter looking for Appellee, and came to the home of Appellee's mother on Christmas day to propose marriage to Appellee. Appellee feared for her and her daughter's safety. An ex parte hearing was held before the magistrate and the ex parte CPO was granted on March 28, 2011. The trial court scheduled a full hearing on the CPO for April 11, 2011.

{¶4} Appellant and Appellee appeared for the full hearing represented by counsel. The hearing was held before the magistrate. The following evidence was adduced at the hearing.

{¶5}   Appellee testified in June 2010, Appellant was working in his barn and K.C. was outside riding her bicycle.  Appellant called to K.C. and K.C. parked her bike in the driveway and went to Appellant.  Appellant told K.C. to stay where she was and Appellant proceeded to pull his truck out of the barn, running over K.C.'s bicycle. Appellee alleged Appellant knew K.C.'s bicycle was in the driveway before he pulled out of the barn and he refused to purchase K.C. a new bicycle to teach her a lesson about leaving her bicycle in the driveway.  Appellee stated Appellant was angry with her for purchasing K.C. a new bicycle.

{¶6}   Appellant admitted he ran over K.C.'s bicycle, but denied running over the bicycle on purpose.  He did not know K.C.'s bicycle was in front of the truck when he pulled it out of the barn.

{¶7}   In November 2010, Appellee testified she and Appellant got into an argument about putting new rotors on Appellee's car.  At dinner, Appellee asked Appellant if he could put new rotors on her car or if she should have someone else change them.  Appellee stated Appellant stood up from the table, threw his plate down, and started screaming that he hated Appellee.  He went out to the garage, picked up the jack, and began repeatedly slamming the jack under the car while screaming he hated Appellee and he hated their relationship.  K.C. witnessed the incident and brought out her own suitcase because she wanted to leave the home.

{¶8}   Appellant denied Appellee's version of that night's events.  He stated Appellee and Appellant possibly had an argument that night.  However, he did not repeatedly slam the jack under Appellee's car.  Appellant stated that while the car was

on the jack, Appellee got into the car and drove the car off the jack. Appellant testified he left that night for a short period of time.

{¶9} On November 26, 2010, Appellee met Appellant for dinner at the Mansfield Restaurant. Appellee told Appellant she was ending the relationship and was moving out. Appellee states after she told this to Appellant, Appellant "bent across the table and looked at me, and he said, Karrie, you don't care about me. You just care whether you're going to get hurt tonight or I'm going to get hurt tonight. And you go home and you wait for me, and I'll be there in a little while." (T. 24.) Appellee did not return to the home that night out of fear for herself and her daughter. Appellant denied making that statement.

{¶10} Appellee and her daughter returned to the home on December 1, 2010, to retrieve their belongings. Appellant was present when she and her daughter went to the home.

{¶11} Appellee also testified while she considered Appellant and Appellee to have terminated their relationship, Appellant continued to contact Appellee. Appellant went to see K.C. at the Christmas program at K.C.'s elementary school. Appellant did not feel he needed to be invited to the Christmas program because it was an open program in a school within his district. On December 25, 2010, Appellant appeared at the home of Appellee's mother. Appellee and Appellant spoke outside and Appellant proposed marriage to Appellee. Appellee states Appellant also presented her with a clock wrapped in a towel. Appellee testified Appellant stated he was there to take back control of the relationship, she had long enough to do what she needed to do,

and it was time for her to come home.  Appellant agreed he asked her to marry him and returned Appellee's clock to her, but denied making those statements to Appellee.

{¶12} Appellant also went to the home of Appellee's babysitter.  On March 19, 2011, Appellant went to the babysitter's home and no one answered the door.  He returned on March 21, 2011 and spoke to the babysitter.  Appellant first stated he was visiting a neighbor, but then stated the neighbor had been Appellee's babysitter for over a year while Appellant and Appellee were dating.  He stated he went to the neighbor to make sure Appellee and her daughter were okay.  Appellant then called the babysitter on March 22, 2011 to tell her she was a liar and he would never contact her again.

{¶13} Appellee testified she has saved 53 text messages and email messages from Appellant.  Appellee has also received phone calls from Appellant's sister.

{¶14} On March 21, 2011, Appellee contacted the Richland County Sheriff's Department.  The Sheriff's Department contacted Appellant to tell him to stop contacting Appellee.  (Appellee's Exhibit 1.)  Since the Sheriff's Department communicated with Appellant, Appellee testified Appellant has ceased contacting her.

{¶15} Appellee stated Appellant never physically harmed her or her daughter. She did consider Appellant's statement and demeanor on November 26, 2010 to be a threat to Appellee.  Appellee filed for the CPO because Appellant would not stop contacting her even though she has asked him to stop.  Appellee is afraid Appellant will come by her house or will make physical contact with her daughter.  Appellee's daughter requests that Appellee put chairs under the locked doors because she is concerned  can break through the door if he is angry.  Appellee's daughter is afraid to

participate in school activities because she is fearful Appellant will come to the activity and take her.

{¶16} At the conclusion of the hearing, the magistrate notified the parties on the record they would receive a magistrate's decision.  The parties would have fourteen days to file written objections.

{¶17} On April 19, 2011, the trial court granted Appellee a Domestic Violence Civil Protection Order against Appellant for five years.  The trial court utilized Form 10.01-I, authorized by Sup.R.10.01, as the Order of Protection.  The order states the court made findings of fact and refers to Exhibit A, attached.  Attached to the Order of Protection is "Exhibit A: Findings of Fact and Conclusions of Law."  Form 10.01-I provides a space for the signature of the magistrate and to the right of the magistrate's signature line, there is a second signature line for the judge beneath the phrase "APPROVED AND ADOPTED."  In this case, the magistrate and the judge both signed the Order.  Form 10.01-I also includes a section entitled, "NOTICE OF FINAL APPEALABLE ORDER."

{¶18} Appellant did not file objections to the Order of Protection, but rather filed an immediate appeal of the April 19, 2011 Order.

## ASSIGNMENTS OF ERROR

{¶19} Appellant raises five Assignments of Error:

{¶20} "I. THE MAGISTRATE'S DECISION AND THE JUDGMENT ENTRY ADOPTING SAME ARE DEFECTIVE AND REQUIRE REVERSAL AND REMAND FOR THE PURPOSE OF ISSUING A MAGISTRATE'S DECISION THAT COMPLIES

WITH CIVIL RULE 53 AND PROVIDES THE PARTIES WITH A MEANINGFUL OPPORTUNITY TO FILE OBJECTIONS.

{¶21} "II. THE COURT ERRED IN FINDING BY A PREPONDERANCE OF THE EVIDENCE THAT APPELLANT HAS ENGAGED IN THE OFFENSE OF MENACING BY STALKING AGAINST APPELLEE AND HER DAUGHTER AND THE FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} "III. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT COMMITTED DOMESTIC VIOLENCE WITHIN THE MEANING OF R.C. 3113.31 AND SUCH FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} "IV. THE COURT COMMITTED ERROR IN GRANTING THE EX PARTE ORDER, AS THERE WAS NO GOOD CAUSE SHOWN AND THE PROVISIONS UNDER R.C. 3113.21(D)(1) WERE NOT MET.

{¶24} "V. THE MAGISTRATE'S FINDINGS IN FAVOR OF THE CPO AND THE TRIAL COURT'S IMMEDIATE ADOPTION OF THE SAME CONSTITUTE REVERSIBLE ERROR UNDER THE ABUSE OF DISCRETION STANDARD."

**ANALYSIS**

**I.**

{¶25} Appellant argues in his first assignment of error the issuance of the Order of Protection on April 19, 2011 does not comply with Civ.R. 53, therefore requiring a reversal and remand. In this case, the full hearing was held before the magistrate on April 11, 2011. On April 19, 2011, the trial court issued the Order of Protection utilizing Form 10.01-I, signed by the magistrate and approved and adopted by the judge. The magistrate attached her findings of fact and conclusions of law to

the Order.  Form 10.01-I contains final, appealable order language, but does not state the Civ.R. 53 language applicable to matters heard by a magistrate.  Appellant did not file objections to the Order of Protection, but instead appealed the decision

{¶26} Appellant's first assignment of error raises the question as to the applicability of Civ.R. 53 to the use of the standardized civil protection order forms created and recommended by the Supreme Court of Ohio pursuant to Sup.R. 10.01. While not cited by Appellant in his Assignment of Error, research by this Court has shown the Ninth District and the Third District Courts of Appeal have specifically addressed the issue presented by Appellant.  We review both cases in turn and conclude that while an Order of Protection issued under R.C. 3113.31 is a final, appealable order, the mandates of Civ.R. 53 are applicable to this case because the matter ultimately arose from a magistrate's decision.

{¶27} R.C. 3113.31 governs the issuance of a domestic violence civil protection order.  It states that any order that grants or denies a petition for a protection order or a motion to modify or terminate a protection order is a final, appealable order.  R.C. 3113.31(G); *Yun v. Yun*, 5th Dist. No. 2002CA00353, 2003-Ohio-2644, ¶ 35.

{¶28} The Supreme Court of Ohio, in consultation with the Domestic Violence Task Force and by request from the General Assembly under H.B. 335, developed forms to allow a petitioner to file a petition for a civil protection order without the assistance of an attorney.  Sup.R. 10.01(C).  The further goal of the creation of the forms was to create uniform protection orders that were easily recognizable to law enforcement agencies across the state.  *Id.*  Under Sup.R. 10.01(C), the courts of

common pleas are required to use forms provided by the Supreme Court of Ohio or substantially similar forms to issue civil protection orders. The rule states, "In every case in which the domestic relations division of a court of common pleas issues or approves an ex parte civil protection order, a full hearing civil protection order, or a consent agreement pursuant to section 3113.31 of the Revised Code, the court shall use, as applicable, forms that are substantially similar to 'Forms 10.01-H through 10.01-J.'" The Form in the present case is Sup.R. Form 10.01-I. This form is used to issue an Order of Protection after the full hearing on a domestic violence civil protection order petition.

{¶29} With this background, the Ninth District Court of Appeals in *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, analyzed the question of whether a civil protection order entered on Form 10.01-I and signed simultaneously by a magistrate and judge was a final, appealable order. The Court overruled its previous holding in *Mills v. Mills*, 9th Dist. No. 24063, 2008-Ohio-3774, to find that such an order was final and appealable. The court stated:

> Form 10.01-I, authorized by Rule 10.01, is the Order of Protection recommended by the Supreme Court of Ohio. It consists of four pages, on which the court of common pleas must fill in all appropriate blanks and check all boxes that apply to the petition at hand. These options reflect the restrictions that may be imposed by the court of common pleas pursuant to R.C. 3113.31(E). In other words, the form permits the court of common pleas to define in a concise and standard way the contours of the order of protection in a given case. Page one of Form

10.01-I sets forth a "Federal Full Faith & Credit Declaration" pursuant to the Violence Against Women Act, 18 U.S.C. § 2265. The last page of Form 10.01-I sets forth instructions to the clerk of court for service upon the parties, local law enforcement agencies, and other agencies specific to the terms of the order. The body of the final page ends with the statement, "IT IS SO ORDERED."

The form contains three notice components: (1) notice to the respondent of the consequences of violating the order; (2) notice to the petitioner that the terms of the order can only be changed by order of the court; and (3) notice to law enforcement agencies that the terms of the protection order must be enforced. In this respect, use of the form adopted by the Supreme Court of Ohio is especially significant because the concise, uniform nature of the document enables agencies that receive notice to verify the validity and terms of a civil protection order efficiently and to act in furtherance of the order without unnecessary delay or confusion.

R.C. 3113.31(G) explains that the Ohio Rules of Civil Procedure apply to proceedings for civil protection orders. Consequently, these proceedings may be heard by a magistrate as provided by Civ.R. 53. Form 10.01-I contemplates this scenario by providing space for the signature of a magistrate and, immediately to the right of the magistrate's signature line, a second signature line for the judge beneath the phrase "APPROVED AND ADOPTED." It is in this context that R.C. 3113.31(G)

provides that any order that grants or denies a petition for a protection order or a motion to modify or terminate a protection order is a final, appealable order.

We conclude that a civil protection order that is entered on Form 10.01-I, or such other form approved by the Supreme Court of Ohio, and signed by a magistrate and a judge is, pursuant to R.C. 3113.31(G), a final, appealable order. *See, generally, Dobos v. Dobos*, 179 Ohio App.3d 173, 901 N.E.2d 248, 2008-Ohio-5665, at ¶ 8 (concluding that a magistrate's decision on a civil protection order "was later signed by the trial court, making the decision a final, appealable order."); *Burke v. Melton*, 8th Dist. No. 81994, 2003-Ohio-7054, at ¶ 21-23 (determining that a civil protection order was final and appealable when it "was signed by both the magistrate and the judge [,][o]n a preprinted section of the journal entry[.]"); *Burke v. Brown*, 4th Dist. No. 01CA731, 2002-Ohio-6164, at ¶ 18-25 (analyzing the merits of an appeal from a civil protection order when "the magistrate decided to issue the civil protection order as evidenced by its signature on the order [and][t]he trial court adopted the magistrate's decision as indicated by its signature on the same order.")
*Tabatabai* at ¶ 8-11.

{¶30} In making this decision, the Ninth District overruled its earlier holding in *Mills v. Mills, supra*, where a CPO was signed by the magistrate and the trial court judge before objections were filed.[1]  *Tabatabai* at ¶ 5.  In *Mills*, the court held that

---

[1] Judge Whitmore dissented in *Tabatabai*, stating she could not agree with the majority's departure from the precedent set in *Mills*, *supra*.

because it appeared the trial court judge did not make an independent review of the order granting the CPO, the appellate court lacked jurisdiction over the appeal. *Id.* Based on R.C. 3113.31(G) and Sup.R. 10.01, the *Tabatabai* court overruled *Mills* to find a CPO was a final, appealable order and therefore the appellate court had jurisdiction to review the case. The *Tabatabai* court went on then to analyze the merits of the Order of Protection. In that case, unlike the case sub judice, the appellant filed objections to the magistrate's decision, which the trial court overruled. The appellant argued the judge did not conduct an independent review of the subject matter of his objections and erred by overruling his objections. The Ninth District utilized the standards found in Civ.R. 53 under which a trial court judge is to review a magistrate's decision to affirm the trial court's decision. *Tabatabai* at ¶ 14.

{¶31} In summary, it was the decision of the Ninth District Court of Appeals in *Tabatabai* that an Order of Protection using Form 10.01-I, granted by a magistrate and approved and adopted by the judge on the same day, is a final, appealable order pursuant to R.C. 3113.31. The Third District Court of Appeals in *Larson v. Larson*, 3rd Dist. No. 13-11-25, 2011-Ohio-6013, further discussed the use of Form 10.01-I and Civ.R. 53.

{¶32} In *Larson*, the magistrate granted a CPO using Form 10.01-I. The trial court signed the order the same day. The appellant filed a motion for a magistrate's decision and requested the magistrate issue findings of fact and conclusions of law. The magistrate denied the motion. *Larson* at ¶ 4-5. The appellant appealed, arguing the magistrate must still proceed under Civ.R. 53 regardless of the forms promulgated under Sup.R. 10.01. *Id.* at ¶ 10. The issue on appeal was whether the magistrate's

use of Form 10.01-I as written complied with Civ.R. 53. *Id.* The *Larson* court found it did not.

{¶33} The *Larson* court recognized Form 10.01-I contemplated magistrates hearing petitions for civil protection orders because the form provided a space for the magistrate's signature. *Id*. at ¶ 11 citing *Tabatabai*, 2009-Ohio-3139 at ¶ 10. The form, however, does not provide a designated space to note the decision was a "magistrate's decision" and does not contain the Civ.R. 53 language regarding objections to a magistrate's decision. Civ.R. 53(D)(3)(a)(i) states that "a magistrate shall prepare a magistrate's decision respecting any matter referred under Civ.R. 53(D)(1)." Civ.R. 53(D)(3)(a)(iii) provides:

A magistrate's decision shall be in writing, identified as a magistrate's decision in the caption, signed by the magistrate, filed with the clerk, and served by the clerk on all parties or their attorneys no later than three days after the decision is filed. A magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).

{¶34} The *Larson* court noted Form 10.01-I fails to meet the Civ.R. 53 requirements. *Id*. at ¶ 11. As such, it held a magistrate issuing a domestic violence civil protection order under R.C. 3113.31 may not use Form 10.01-I as written. *Id*. The court found Sup.R. 10.01(C) allowed adjustment to Form 10.01-I to comply with

Civ.R. 53 in that the rule did not require the courts of common pleas to use the exact forms found in 10.01-H to 10.01-J. *Id.* at ¶ 12. Sup.R. 10.01(C) stated courts could use forms "substantially similar to Forms 10.01-H through 10.01-J," allowing a magistrate to comply with both Sup.R. 10.01(C) and Civ. R. 53 by including the necessary language of Civ.R. 53 on Form 10.01-I. *Id.*

{¶35} In reviewing the CPO on appeal, the *Larson* court found the CPO failed to comply with Civ.R. 53 because it did not designate it was a magistrate's decision and did not give notice to the parties they may file objections to the decision with fourteen days. *Id.* at ¶ 14. The court noted, however, if the order fails to give notice to the parties of the requirement to file objections, the appealing parties are relieved from the waiver rule found in Civ.R. 53(D)(3)(b)(iv) and are permitted to raise their arguments for the first time on appeal. *Id.* In the *Larson* case, the appellant's sole assignment of error was the magistrate's failure to abide by Civ. 53, so the court reversed and remanded the decision for the magistrate to issue findings of fact and conclusions of law and to allow the appellant to file objections before the magistrate. *Id.*

{¶36} We reconcile the holdings of *Tabatabai* and *Larson* to find pursuant to R.C. 3113.31(G), an order that grants a protection order or refuses to grant a protection order is a final, appealable order. However, the dictates of Civ.R. 53 still come into play with an Order of Protection granted by a magistrate utilizing Form 10.01-I. Specifically, Civ.R. 53(D)(3)(a)(iii) requires a magistrate's decision to include conspicuous language informing the parties of their responsibility to object to the decision. As the *Larson* case noted, however, if the magistrate fails to provide the

parties with the notice pursuant to Civ.R. 53(D)(3)(a)(iii), a party may raise their arguments for the first time on appeal. *Larson* at ¶ 14. See also, *In re A.W.C.,* 4th Dist. No. 09CA31, 2010-Ohio-3625, ¶ 18; *Picciano v. Lowers,* 4th Dist. No. 08CA38, 2009-Ohio-3780, ¶ 17; *Chibinda v. Depositors Ins.*, 12th Dist. No. CA2010-09-254, 2011-Ohio-2597, ¶ 37; *D.A.N. Joint Venture III, L.P. v. Armstrong*, 11th Dist. No. 2006-L089, 2007-Ohio-898, ¶ 22-23; *Ulrich v. Mercedes-Benz USA, L.L.C.*, 9th Dist. No. 23550, 2007-Ohio-5034, ¶ 15. Accordingly, an Order of Protection issued by a magistrate and simultaneously signed by a judge utilizing Form 10.01-I is a final, appealable order and because Form 10.01-I does not contain Civ.R. 53(D)(3)(a)(iii) language, parties are relived from the waiver rule and may raise their arguments for the first time on appeal. This resolution is supported by both the rationale for adoption of the forms under Sup.R. 10.01 and the dictates of Civ.R. 53.

{¶37} In our case, the April 19, 2011 Order of Protection does not contain language stating it was a magistrate's decision or give notice to the parties of the requirement to file objections. As such, we find Appellant is relieved of the waiver rule and is permitted to raise his arguments for the first time on appeal. Further, the magistrate issued findings of fact and conclusions of law with the Order of Protection, obviating the need to remand the decision for further proceedings as was required in *Larson.*

{¶38} Appellant's first assignment of error is overruled.

**II., V.**

{¶39} Appellant argues in his second assignment of error the trial court erred in finding Appellant committed domestic violence in violation of R.C. 3113.31(A)(1)(b).

Appellant reiterates his argument in his fifth assignment of error utilizing a different standard of review. Under both standards, manifest weight of the evidence or abuse of discretion, we find the trial court did not err in granting the Order of Protection.

{¶40} R.C. 3113.31(A)(1)(b) defines domestic violence as "the occurrence of one or more of the following acts against a family member: * * * (b) [p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code." The trial court determined Appellant was in violation of R.C. 3113.31(A)(1)(b) pursuant to R.C. 2903.211, menacing by stalking. According to R.C. 2903.211(A), "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶41} The statute further defines "pattern of conduct" as two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. R.C. 2903.211(D)(1). "Mental distress" means any of the following: (a) any mental illness or condition that involves some temporary substantial incapacity; (b) any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services. R.C. 2903.211(D)(2).

{¶42} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Halton v. Crossley*, 5th Dist. Nos. 11CA10, 11CA11, 2012-Ohio-550, ¶ 49 citing *Olenik v. Huff,* 5th Dist. No. 02-COA-058, 2003-

Ohio-4621, at ¶ 21.  Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion.  In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶43} We further note a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).  A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court.  *Myers v. Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742 (1993).  The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.  *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶44} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact, in this case, the trial court.  *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), certiorari denied, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶45} Appellant contends in this case Appellee has failed to establish a pattern of conduct or that Appellee suffered mental distress. We disagree. The trial court's decision to issue a protection order was not against the manifest weight of the evidence nor did the trial court abuse its discretion in issuing the order. The record shows Appellant's behavior in sending Appellee at least 53 text messages and emails, appearing at the Christmas program of Appellee's daughter, appearing at Appellee's mother's home on Christmas day, and twice coming to Appellee's babysitter's home all after Appellee had broken off their relationship establishes a pattern of conduct. Appellee further testified to the mental distress suffered by Appellee and her daughter by Appellant's appearances. Appellee's daughter asks that her mother place a chair under the locked doors in case Appellant breaks down the door. Appellee's daughter is concerned Appellant will take her from her mother and avoids participating in school activities.

{¶46} We find the record establishes Appellant, by continuously contacting Appellee after the termination of their relationship, has knowingly caused Appellee and her daughter mental distress. The magistrate, who was in the best position to observe the witnesses, noted often in her findings of fact she determined Appellee's testimony was more credible than Appellant is based upon the parties' demeanor in the courtroom. This court has previously noted that in civil protection order cases, demeanor and attitude are very important but do not translate well on the written page. *Halton v. Crossley, supra* at ¶ 56.

{¶47} Upon these facts, we find the trial court's decision to grant the Order of Protection was based on competent, credible evidence and was not an abuse of discretion. Appellant's second and fifth assignments of error are overruled.

### III.

{¶48} Appellant contends in his third assignment of error the trial court erred in finding Appellant committed domestic violence pursuant to R.C. 3113.31(A)(1)(b). At the full hearing, Appellee testified on November 26, 2010, Appellant made the following statement to her after Appellee informed Appellant she was breaking up with him: "You just care whether you're going to get hurt tonight or I'm going to get hurt tonight. And you go home and you wait for me, and I'll be there in a little while." Based on Appellant's statement and demeanor, Appellee and her daughter did not return to Appellant's home that evening because she feared for their safety. The trial court found Appellant's statement and his angry demeanor while making the statement was an implied threat of domestic violence.

{¶49} R.C. 3113.31(A)(1)(b) defines domestic violence as placing another person by the threat of force in fear of imminent serious physical harm.

{¶50} Appellant argues Appellee could not have perceived Appellant's statement as a threat of imminent serious physical harm because Appellee came to Appellant's home unescorted on December 1, 2010 to retrieve her belongings. Upon our review of the record, we find there was competent, credible evidence upon which the trial court could support its decision that on November 26, 2010, Appellant's statement to Appellee was a perceived threat of force placing Appellee in fear of imminent serious physical harm to herself or her daughter that evening. As stated

above, the trial court is in the best position to determine the credibility of the witnesses. Appellee may have returned to Appellant's home on December 1, 2010, but the record shows on November 26, 2010, Appellant's statement caused Appellee to be in fear of imminent serious physical harm.

{¶51} Appellant's third assignment of error is overruled.

**IV.**

{¶52} Appellant's fourth assignment of error contends the trial court erred in granting Appellee's petition for an ex parte civil protection order.

{¶53} On March 28, 2011, Appellee filed a petition for an ex parte domestic violence civil protection order. The trial court granted the ex parte civil protection order after finding Appellee was in immediate and present danger of domestic violence and for good cause shown. The ex parte order was set for a full hearing on April 11, 2011. After the full hearing, the trial court granted the Order of Protection.

{¶54} Based on our findings that the Order of Protection was supported by competent and credible evidence, we find no error in granting the ex parte civil protection order.

{¶55} Appellant's fourth assignment of error is overruled.

**CONCLUSION**

{¶56} For the reasons stated herein, Appellant's five assignments of error are overruled. The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Farmer, J. and

Edwards, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. SHEILA G. FARMER


_____
HON. JULIE A. EDWARDS

[Cite as *Calzo v. Lynch*, 2012-Ohio-1353.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KARRIE J. CALZO | : | |
| | : | |
| | : | |
| Petitioner-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TIMOTHY J. LYNCH | : | |
| | : | |
| | : | Case No. 11CA45 |
| Respondent-Appellant | : | |

 

For the reasons stated in our accompanying Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to Appellant.

 

_____
HON. PATRICIA A. DELANEY

 

_____
HON. SHEILA G. FARMER

 

_____
HON. JULIE A. EDWARDS